**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RANDY FOWLER,

        Plaintiff,

v.

METZ CULINARY MANAGEMENT,
LLC,

        Defendant.

_____/

Case No. 2:25-cv-11269

Hon. Brandy R. McMillion
United States District Judge

**OPINION AND ORDER DENYING PLAINTIFF'S PARTIAL
MOTION FOR SUMMARY JUDGMENT (ECF NO. 13) AND
GRANTING DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT (ECF NO. 14)**

Plaintiff, Randy Fowler ("Plaintiff" or "Fowler"), originally brought a claim

in the Wayne County Circuit Court against Defendant, Metz Culinary Management

("Defendant," "Metz," or "the Company"), for retaliation in violation of the Family

and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").  *See generally* ECF

No. 1.  After which, Defendant removed the case to federal court.  *Id.*  The parties

conducted discovery and each independently determined that there is no genuine

dispute of material fact as to why Metz terminated Fowler.  Consequently, before the

Court are the parties' cross motions for summary judgment.  *See* ECF Nos. 13-14.

1

The Motions have been adequately briefed so the Court finds oral argument unnecessary and will rule based on the record before it. *See* ECF Nos. 13, 14, 15, 16, 18; *see also* E.D. Mich. LR 7.1(f)(2). As outlined below, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 14) and **DENIES** Plaintiff's Partial Motion for Summary Judgment (ECF No. 13).

## I.

Metz is a family-driven company that collaborates with clients "to deliver restaurant-inspired hospitality." ECF No. 14, PageID.257. The Company hired Fowler on or around August 13, 2018, where he was employed as a General Manager and responsible for "the food service program for the University of Detroit Mercy [(UDM)]." *Id*; *see also* ECF No. 1-1, PageID.12. UDM is one of Metz's clients. ECF No. 14, PageID.257. Fowler was an at-will employee at the Company. *Id*; *see also* ECF No. 14-2, PageID.284 ("EMPLOYER may, at its option at any time, and with or without cause, terminate EMPLOYEE'S employment. The parties acknowledge that EMPLOYEE'S employment involves significant front-end costs to EMPLOYER.").

Starting in October 2023, Plaintiff began reporting to William Harvey ("Harvey") "who was hired to be the District Manager over Plaintiff's region." ECF No. 14, PageID.258. In accordance with Harvey's role, he visited UDM weekly and provided Fowler with feedback about his performance. *Id.* For instance, Defendant

alleges Harvey told Plaintiff his office was messy and unorganized, as well as raised concerns to Plaintiff "about the quality of food and leadership of the food services department under Plaintiff's management." *Id.*  Plaintiff denies this, albeit without offering any alternative characterization of whether, or what type of feedback Harvey did provide.  ECF No. 15, PageID.428.

Plaintiff was approved for intermittent leave from February 28, 2023 through February 27, 2024.  ECF No. 15, PageID.429.  Accordingly, his leave rendered him incapacitated "up to 1-2 times every month lasting up to 1-2 days per episode and appointments planned in advance with the employer." *Id*; *see also* ECF No. 14-7, PageID.325.  The parties dispute whether all of Fowler's absences were attributable to FMLA leave.[1]  According to Defendant, "[b]etween October 23, 2023 and November 17, 2023, Plaintiff took over twelve days off – exceeding his allotted one to two days per month by ten days[,]" which Plaintiff disputes.  *See* ECF No. 14, PageID.260; ECF No. 15, PageID.430.

At the beginning of January 2023, Plaintiff's manager, Harvey, placed him on a performance improvement plan ("PIP").  *Id.*  In Plaintiff's view, the PIP was an

---

[1] *Compare* ECF No. 14, PageID.259-260 ("Not all the time Plaintiff took off was attributable to FMLA.  For example, at the end of November and beginning of December, Fowler worked an average of 6.5 hours per day but did not attribute his shortened days to his intermittent leave.") (cleaned up) *with* ECF No. 15, PageID.430 ("RESPONSE: Denied as untrue and Defendant's Exhibit H does not support this allegation.  In fact, Defendant's witnesses testified consistently with Plaintiff's position.  McCann admitted that she was unaware of Plaintiff misusing FMLA. McCann was unaware of any attendance infractions for non-FMLA absences.") (cleaned up).

attempt to set the stage for his termination; but Defendant maintains that Harvey believed Plaintiff would successfully complete the plan. *Id.* About one year later, on January 9, 2024, Fowler advised the Company's Vice President of Human Resources that he intended to seek other employment opportunities. *Id.* Upon receiving Fowler's email, Metz began efforts to fill his soon-to-be-vacant position. *Id.* A then-assistant manager, Nancy Preston, applied for the General Manager position and she ultimately replaced Fowler. *Id*; *see also* ECF No. 18-5, PageID.1070.

Plaintiff's employment with Metz ended on January 29, 2024, pursuant to a Separation Notice ("the Notice"). ECF No. 14, PageID.261. In it, Harvey listed the circumstances that led to Fowler's separation as "inability to manage UDM, not willing to make change, attendance." ECF No. 14-13, PageID.350. Fowler believes that contrary to the representation in the notice, Harvey took issue with Plaintiff's intermittent FMLA leave, and "admitted" it "created a hardship on the account." ECF No. 15, PageID.435. As best the Court can discern, Plaintiff is referring to the following exchange which occurred during Harvey's deposition:

> Q. When he told you that he was on partial or intermittent FMLA did that cause you concern?
> A. Not at that time.
> Q. Okay. Did you have any other managers on partial, intermittent or continuous FMLA in the Fall of 2023?
> A. No.
> Q. How about 2024?

> A. No.
>
> Q. When did the fact that he had partial or intermittent FMLA cause you concern?
>
> A. When he was not at the account, when I was not getting phone calls like I had requested to let me know that he wasn't going to be at the account. When the client at the account raised concerns about quality of food and leadership of the account. […] And when I had to put another manager at the account to run the business.

ECF No. 18-5, PageID.1064-1065.

On the day of his termination, Plaintiff wrote in a Facebook post, "[…] today was my last day as I let them know I was looking for other employment and would give them two weeks, they decided that it was time.  It has been a very tough year medically being on an FMLA and not being able to do my job as I have in the past, very disappointed that they did not give me time to find a different way to support my family but that is what happens when a family owned company sells it[sic] soul to a [sic] financially[sic] driven partner."  ECF No. 14-14, PageID.352.  Plaintiff maintains that at the time he drafted the post, he "was not given a reason for his termination and was not privy to the Separation Notice."  ECF No. 15, PageID.434.

## II.

When a party moves for summary judgment, it must show there's no genuine dispute on any material fact and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is a genuine dispute of material fact when there are

5

"disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the nonmoving party only when there exists "a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Scott*, 550 U.S. at 380; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247-248). The court does not weigh the evidence to determine the truth of the matter but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

When evaluating cross-motions for summary judgment, the Court must "evaluate each party's motion on its own merits, taking care in each instance to draw

all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Id*. (citations omitted).

### III.

### A. Direct Evidence of FMLA Retaliation

Plaintiff first advances a direct evidence theory of FMLA retaliation, based on an assertion that "[t]he Separation Notice along with the testimony of decision-makers makes it clear that his use of FMLA motivated the discharge." ECF No. 13, PageID.89; ECF No. 15, PageID.441. Defendant takes the position that there is no direct evidence in this case because "Plaintiff can point to no credible direct evidence that Plaintiff's FMLA leave was a motivating factor in Plaintiff's termination." ECF No. 14, PageID.264. Defendant is correct.

Direct evidence of retaliation "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 432 (6th Cir. 2014). For instance, in *Daugherty v. Sajar Plastics, Inc.*, the Sixth Circuit found that the district court erred when it did not recognize the following "unambiguous comment"

7

as direct evidence: "Ron told me, at the very end, if I took that FMLA [leave] for that period of time [four to six weeks] there would not be a job waiting for me, when I returned."  544 F.3d 696, 708 (6th Cir. 2008).  Meanwhile, here, the extent of Plaintiff's direct evidence is (1) a Separation Notice, (2) alleged comments by Harvey that portray Defendant's "distaste for [Plaintiff's] FMLA status," and (3) Defendant's "complete lack of paper trail to justify a lack of performance[.]"  ECF No. 13, PageID.92-93.  Each of these allegations are reflective of the types of "general, vague, or ambiguous comments [that] do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus."  *Daugherty*, 544 F.3d at 708.

Notably, Plaintiff himself admits that the Separation Notice "indicates that Plaintiff was separated due to [his] 'inability to manage UDM, not willing to make change, attendance.'"  ECF No. 13, PageID.85; *see also* ECF No. 13-2, PageID.96 (Separation Notice).  Without drawing at least some inferences, a factfinder could not reasonably find that the Notice evidences discriminatory motive.  Nor has Plaintiff identified any specific comments by Defendant or Harvey which may constitute direct evidence of FMLA retaliation.  Given the lack thereof, Plaintiff's claims cannot proceed on a direct evidence theory.

## B. Circumstantial Evidence of FMLA Retaliation

Plaintiff must thus prove his claims through circumstantial evidence; therefore, the Court will apply the familiar *McDonnell Douglas* burden-shifting framework. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313–16 (6th Cir.2001) (cleaned up).[2]  As always, the inquiry begins with whether Plaintiff can establish a *prima facie* case of FMLA retaliation, which requires showing that "(1) he was engaged in a statutorily protected activity; (2) [Metz] knew that he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274 (6th Cir. 2012).  Notably, Plaintiff's burden at this stage is minimal. *Id.*  Even so, Defendant contends that Plaintiff cannot establish a *prima facie* case because there is no causal connection between exercising his FMLA rights and Metz's termination of Plaintiff's employment.  ECF No. 14, PageID.266-267.

Fowler responds that "[to] the contrary, Defendant cannot point to any competent evidence that Plaintiff's termination was not causally connected to his FMLA usage[.]" ECF No. 15, PageID.441.  But as the Court has already made clear

---

[2] "Under McDonnell Douglas, [Fowler] must first prove a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802.  The burden then shifts to [Metz] to articulate a legitimate, nondiscriminatory reason for [Fowler's] discharge. *Id*. at 802–04.  If [Metz] articulates such a reason, then [Fowler] has the burden of showing that the articulated reason is in reality a pretext to mask discrimination."

above, this initial burden rests with Plaintiff—not Defendant.  Therefore, the Court rejects Fowler's suggestion that a causal connection must exist if Defendant cannot produce evidence to the contrary.  Instead, Fowler must "put forth some evidence [that would enable the Court] to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible."  *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997).  And Fowler has failed to adequately do so.

"In order to establish a causal connection, a plaintiff must show some type of retaliatory intent."  *Shoemaker v. ConAgra Foods, Inc.*, 219 F. Supp. 3d 719, 729 (E.D. Tenn. 2016) (quoting *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016)).  Plaintiff first asserts that the Separation Notice is evidence of causal connection.  ECF No. 15, PageID.441; *see also* ECF No. 13, PageID.89.  However, the Court does not arrive at the same conclusion about a one-page Notice which describes Metz's basis for discharging Plaintiff as his "inability to manage UDM, not willing to make change, attendance."  ECF No. 13-2, PageID.96.  Although Plaintiff claims this is a "clear" indication of a causal connection between exercising his FMLA rights and his termination, the Court finds no such retaliatory intent.  In particular, there is nothing in the Notice that creates a genuine issue of material fact as to whether Metz's motive to terminate Fowler's employment was "specifically

10

*because* [he] invoked [his] FMLA rights." *Shoemaker*, 219 F. Supp. 3d at 729 (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (emphasis in original)).

The same holds true for Plaintiff's claim that "the testimony of decision-makers makes it clear that his use of FMLA motivated the discharge." ECF No. 15, PageID.441. First, and egregiously, Plaintiff provides no citations to the record regarding the alleged testimony, which is fatal to his argument. *See In re Kennedy*, 249 F.3d 576, 579 n.3 (6th Cir. 2001) ("[I]t is not the Court's duty to search the record for relevant materials."). Nevertheless, based on its own review of the record, the Court finds that Harvey expressly rejected any suggestion that he took issue with Plaintiff's intermittent FMLA leave, let alone that it caused Plaintiff's termination.

> Q. When he told you that he was on partial or intermittent FMLA did that cause you concern?
> A. Not at that time.
> Q. Okay. Did you have any other managers on partial, intermittent or continuous FMLA in the Fall of 2023?
> A. No.
> Q. How about 2024?
> A. No.

ECF No. 18-5, PageID.1064-1065.

In fact, when counsel inquired about when Plaintiff's "partial or intermittent FMLA cause[d] concern[,]" Harvey answered, "[w]hen [Plaintiff] was not at the account, when I was not getting phone calls like I had requested to let me know that he wasn't going to be at the account." *Id.* He continued, "[w]hen the client at the

account raised concerns about quality of food and leadership of the account." *Id.* Here, like in *Basch v. Knoll, Inc.*, the Company "repeatedly granted [Fowler's] FMLA requests over an extensive period." 619 F. App'x 457 (6th Cir. 2015). Thus, without providing any "additional evidence that [Metz] discharged [him] because [he] declared an intent to" continue taking FMLA leave, there is no "cognizable claim of causation, [and Fowler's] prima facie case must fail." *Id.*

Here, the undisputed factual record does not support a causal connection finding; and on the record currently before this Court, no reasonable jury could find that Metz terminated Fowler *because* he took FMLA leave. Consequently, Fowler cannot establish a *prima facie* case, and his sole claim in this action fails as a matter of law.

## C. Defendant's Legitimate, Nondiscriminatory Reason and Plaintiff's Lack of a Pretext Showing

But even if the Court were to proceed to the next steps of the *McDonnell Douglas* framework, Plaintiff's claim would similarly fail at the final, pretext stage. According to Metz, its legitimate, non-discriminatory reason for terminating Fowler was because he informed the Company that he was seeking other employment. ECF No. 14, PageID.269-270; *see also* ECF No. 16, PageID.597. Plaintiff disputes this, arguing he "has rebutted any allegation that he was underperforming in any respect. Further, the distaste for his FMLA status by Harvey and the complete lack of papertrail to justify a lack of performance warrants Summary Judgment in Plaintiff's

12

favor[.]" ECF No. 15, PageID.444-445. Despite this assertion, Plaintiff admits Metz "decided that it was time" to terminate him after he informed them that he "was looking for other employment and would give them two weeks [notice]". ECF No. 14-14, PageID.352. A reasonable jury could not differ as to whether Fowler's own statement that "[Metz] decided it was time" meant that the Company elected not to permit him to complete his two-week notice period, which it was under no legal obligation to provide, given his at-will employee status. ECF No. 14-2, PageID.28.

What's more, in the same post, Fowler attributed Metz's decision to terminate him to the Company "sell[ing its] soul to a[sic] financialy[sic] driven partner." ECF No. 14-14, PageID.352. While Plaintiff may consider Defendant's decision to "sell its soul" problematic, such allegation does not give rise to an actionable cause of action. So, even if Plaintiff could satisfy the causal connection element of his *prima facie* case—which he cannot—the Court finds that he still cannot show that Defendant's legitimate, nondiscriminatory reason for his termination is mere pretext. Fowler's FMLA claim is therefore dismissed.

## IV.

**IT IS HEREBY ORDERED** that Plaintiff's Partial Motion for Summary Judgment (ECF No. 13) is **DENIED** and Defendant's Cross-Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

13

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

*This is a final order that closes the case.*

Dated: July 10, 2026              s/ Brandy R. McMillion
    Detroit, Michigan         Hon. Brandy R. McMillion
                        United States District Judge